# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

VÍCTOR ÁLVAREZ MAURÁS,

    Plaintiff,

v.

BANCO POPULAR DE PUERTO RICO, *et al.*,

    Defendants.

Civil No. 16-2864 (BJM)

## OPINION AND ORDER

Defendants Banco Popular of Puerto Rico ("Banco Popular"), Alexander García ("García"), Wanda O. Meléndez-Santos ("Meléndez"), and the conjugal partnership comprised by García and Meléndez (collectively, "Defendants") bring this motion to recoup attorney's fees after prevailing against Plaintiff Víctor Álvarez-Maurás ("Álvarez"). Dkt. 51 at 1 (henceforth "Mot."). The suit concerned violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO"), allegedly committed by Defendants. *See* Dkt. 48. All claims against Defendants were dismissed by this court, and the dismissal was upheld by the First Circuit. Dkt. 40 at 1; Dkt 48 at 27. Defendants then filed this motion requesting $53,610 for attorneys' fees incurred during this case's two-and-a-half-year duration. Mot. at 2. For the reasons set forth below, Defendants' motion for attorneys' fees is **DENIED**.

## BACKGROUND

This case arose out of a controversy in which Álvarez alleged that García, a securities broker at Banco Popular's affiliate Popular Securities, Inc. ("Popular Securities"), fraudulently transferred $400,000 out of Álvarez's investment account. *See* Dkt. 48 at 4. Álvarez asked Popular Securities to investigate this issue on two separate occasions, and both investigations found no evidence of any wrongdoing. *Id* at 5.

Álvarez next sought arbitration, which was required pursuant to the agreement he signed with Popular Securities which stated:

> All controversies that may arise between the undersigned [Álvarez] and you, as introducing or clearing broker, your agents, or employees, concerning any transaction or the construction, performance, or breach of this or any other agreement between us, whether such transaction or agreement was entered in prior, on, or subsequent to the date hereof, shall be determined by arbitration.[1]

Dkt. 48 at 6. Accordingly, Álvarez filed a claim with the Financial Industry Regulatory Authority ("FINRA"). *Id.* In the arbitration proceedings, FINRA, with no further explanation, dismissed Álvarez's claims with prejudice for failing to make out a prima facie case. *Id.* at 8. However, FINRA also ordered Popular Securities to pay $16,750 in arbitration fees and denied its request for $70,000 in attorneys' fees. *Id.* FINRA also returned Álvarez's filing fee and did not allow the complaint to be expunged from García's record. *Id.* The inconsistencies of this award caused Álvarez to present a complaint to the Court of First Instance of the Commonwealth of Puerto Rico. Dkt. 1 ¶ 36. The court, which adhered to Puerto Rico law urging great deference to arbitration decisions, affirmed the award. Dkt. 48 at 9. Álvarez's subsequent appeals to the Commonwealth's Appeals Court and Supreme Court also were unsuccessful, and he received his final denial from the Commonwealth's courts on October 23, 2015. *Id.*

Following his fruitless litigation in the Commonwealth's courts, Álvarez attempted to bring federal RICO claims in this court against García and Banco Popular on October 20, 2016. *Id.* at 9. These claims were litigated up to the First Circuit, who ultimately affirmed the orders dismissing the claims against all Defendants. Dkt. 48 at 26–27. The Court of Appeals found that the claims against Popular Securities and García were subject to the arbitration agreement and dismissed those claims without prejudice to arbitration.

---

[1] All parties agree that this agreement only binds Popular Securities and García, not Banco Popular. Dkt 48 at 6.

*Id.* at 14–15. The court also upheld the dismissal of Álvarez's claims against Banco Popular with prejudice for missing the statute of limitations on RICO claims. *Id.* at 27.

On April 29, 2019, Defendants filed a motion to recoup attorneys' fees incurred in litigating this case. *See* Dkt. 51.

**DISCUSSION**

RICO allows for the recuperation of reasonable attorneys' fees by "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In the case at hand, Defendants do not allege that they were harmed due to a violation of § 1962; therefore they are ineligible to receive attorneys' fees based on a statutory provision within RICO itself. *See* Mot.; § 1964(c). Defendants instead claim that they are entitled to attorneys' fees under 28 U.S.C. § 1927, which states that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See also* Mot. at 8. Álvarez has not opposed the motion for attorneys' fees.

Defendants correctly state that the First Circuit does not require a showing of subjective bad faith to meet the § 1927 standard for imposing attorneys' fees. *Id.*; *McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger*, 280 F.3d 26 (1st Cir. 2002). However, the absence of such a requirement does not mean that § 1927 sanctions are to be imposed liberally. The behavior of the party to be sanctioned must be "more severe than mere negligence, inadvertence, or incompetence" and must display a "serious and studied disregard for the orderly process of justice." *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990); *United States v. Nesglo, Inc.*, 744 F.2d 887, 891 (1st Cir. 1984). Some signs of vexatious litigation include "duplicative motions being filed or repeated refusals to comply with court orders." *Rossello-Gonzalez v. Acevedo-Vila*, 483 F.3d 1, 7 (1st Cir. 2007).

Moreover, just because a claim ultimately is judged to be without merit does not make it vexatious or unreasonable. *New England Surfaces v. E.I. DuPont de Nemours &*

*Co.*, 558 F. Supp. 2d 116, 126 (D. Me. 2008) (citing *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001), *amended on reh'g* 311 F.3d 1077 (11th Cir. 2002)) ("Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case."). Similar standards are applied when determining if a case is brought frivolously. An appeal "can be weak, indeed almost hopeless, without being frivolous." *Lallemand v. Univ. of Rhode Island*, 9 F.3d 214, 217 (1st Cir. 1993). The court can only find that a case was brought frivolously if "the arguments in support of it are wholly insubstantial and the outcome is obvious from the start." *In re Efron*, 746 F.3d 30, 37 (1st Cir. 2014).

When placed up against these strict standards, Defendants have not established that Álvarez's decision to pursue this litigation was so misguided as to warrant an imposition of § 1927 sanctions. In this case, Álvarez presented two principle arguments. First, that his federal RICO claims are not barred by his arbitration agreement. Mot. at 11. More specifically he alleged that his claims against Defendants are substantially different from those litigated through arbitration, and that he had a right inherent in RICO to allow him to pursue his claims in federal court. *Id.* at 13. Second, that the statute of limitations on his claims had not expired. *Id.* Álvarez argued that the courts wrongly determined that he knew or should have known about his injury on January 19, 2012 (when he filed his FINRA claim) as opposed to February 20, 2013 (when forensic examination revealed the extent of García's fraudulent actions). *Id* at 16.

In the end, both arguments were unavailing. The First Circuit held that the claims against the Defendants were subject to the arbitration agreement, and that the district court used the correct starting date for determining the statute of limitations. Mot. at 27. Even though Álvarez's litigation attempts ultimately were unsuccessful, there is no indication that any of his actions were sufficiently frivolous to warrant the imposition of sanctions.

Throughout this case, Álvarez has not filed any duplicative motions, nor has he refused to comply with any court orders. He was never warned by the court that further pursuit of these claims could result in the imposition of sanctions. *See* Dkt. 48. Defendants'

arguments in favor of sanctions are primarily based on the assumption that the evidence against Álvarez was so overwhelming that continuing to litigate it was an inherently frivolous and unneeded endeavor. *See* Mot. 11–14. The First Circuit's opinion, however, shows that Álvarez did put forth genuine issues both of law and fact whose outcome wasn't necessarily obvious from the start.

Álvarez's arguments against Banco Popular raised several legal questions as to when a defendant has been "injured" for the purpose of calculating the statute of limitations, an issue which has been contested and debated in a number of courts. Dkt. 48 at 15–19. His claims concerning the arbitration agreement dealt with how expansive it was and whether his new claims could be brought in federal court through RICO. 18 U.S.C. § 1964(c); Dkt. 48 at 12–15. The First Circuit gave full consideration to these arguments, and nothing in its opinion indicates that that these arguments were "wholly insubstantial" or that Álvarez was harassing or vexatious by presenting them before the court. *In re Efron*, 746 F.3d at 37.

Defendants also argue that Álvarez failed to comply with the Federal Rules of Civil Procedure and the First Circuit's Appellate Rules. Mot. at 14. However, they do not proffer any evidence that this noncompliance was anything but "mere negligence, inadvertence, or incompetence" which has been found not to be a solid basis for granting sanctions. *Cruz*, 896 F.2d at 632. The rest of their argument in favor of awarding attorneys' fees is simply that Álvarez was active in pursuing his case by filing motions and responding to claims made by Defendants. Mot. at 13–14. All these actions that Defendants take umbrage with are normal actions undertaken by plaintiffs and their counsel during litigation and are certainly not "objectively . . . unreasonable, harassing, and annoying" as Defendants claim. *Id.* at 14.

Finally, Defendants point out that they sent a letter to Álvarez threatening that continued litigation would result in requests for attorney's fees. Dkt. 48 at 11. Defendants

also allegedly sent a draft Rule 11 motion explaining why this case was unwarranted.[2] *Id*. The ultimate decision on awarding fees, however, is a matter of court discretion, and is not controlled by a defendant's subjective view of the merits of their opponent's case. *Tang v. State of R.I., Dep't of Elderly Affairs,* 163 F.3d 7, 13 (1st Cir. 1998) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). ("While decisions to grant defendants their fees are, and should be, rare, 'a district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'"). For the above reasons, it is this court's view that Álvarez did not act improperly throughout this litigation.

Álvarez allegedly was the victim of an unfortunate situation and actively pursued every avenue he could to obtain a remedy. In the end his efforts proved unsuccessful, but such is the case with many litigants. Zealously seeking justice is not harassment, and not prevailing on claims does not mean that they were frivolous or unreasonable. Whether or not Álvarez's choice to continue litigating this case was a good decision is immaterial, as it is clear that he did not cross any lines by doing so. *See In re Efron*, 746 F.3d at 38.

## CONCLUSION

For the foregoing reasons, the Defendants' request for attorney's fees is **DENIED**. All parties shall bear their own costs.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 23rd day of July, 2019.

*S/Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge

---

[2] Defendants never filed this Rule 11 motion with the Court.